IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PACE INDUSTRY UNION-MANAGEMENT PENSION FUND; and<br><br>BOARD OF TRUSTEES OF THE PACE INDUSTRY UNION-MANAGEMENT PENSION FUND,<br><br>Plaintiffs,<br><br>v.<br><br>WESTROCK RKT COMPANY,<br><br>Defendant. | No. _____<br><br>**Additional Required Service under 29 U.S.C. § 1132(h) to:**<br><br>U.S. Department of Labor<br>Attn: Assistant Solicitor<br>  for Plan Benefits Security<br>200 Constitution Ave., N.W.<br>Washington, DC 20210<br><br>U.S. Department of Treasury<br>Attn: Secretary of the Treasury<br>1500 Pennsylvania Avenue, NW<br>Washington, D.C. 20220 |

# COMPLAINT

1. Plaintiffs PACE Industry Union-Management Pension Fund (the "Pension Fund") and the Board of Trustees for the PACE Industry Union-Management Pension Fund (the "Board of Trustees") bring this action to enforce Defendant's statutory and contractual obligations to pay the Pension Fund its pro rata share of the Pension Fund's accumulated funding deficiency. The action is brought pursuant to the Employee Retirement

1

Income Security Act, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), and Section 301(a) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a).

## *Jurisdiction and Venue*

2. The Court has subject matter jurisdiction of this action under the terms of Section 502 of ERISA, 29 U.S.C. § 1132; Section 515 of ERISA, 29 U.S.C. § 1145; and Section 301(a) of the LMRA, 29 U.S.C. § 1085(a).

3. Venue is proper in this district pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and pursuant to 28 U.S.C. § 1391(b)(1), because the Defendant resides in this district.

## *Parties*

4. Plaintiff Pension Fund is a trust fund established and maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act ("LMRA"), as amended, 29 U.S.C. § 186(c)(5).  The Pension Fund is an employee pension plan within the meaning of Section 3(2) of ERISA, 29 U.S.C. § 1002(2), and is maintained for the purpose of providing pension and related benefits to eligible participants.  The Pension Fund is also a multiemployer pension plan within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37).

      Pursuant to Section 302(c)(5) of the LMRA, the Pension Fund is governed by a trust agreement—the PACE Industry Union-Management Pension Fund Amended and Restated Agreement and Declaration of Trust ("Trust Agreement").

5. The Pension Fund is administered by Plaintiff Board of Trustees, which consists of trustees appointed by the sponsoring union, the United Steelworkers, and trustees appointed by participating employers, who are equally represented in the administration of the Pension Fund. Plaintiff Board of Trustees is a named fiduciary within the meaning of § 402 of ERISA, 29 U.S.C. § 1102(a)(2). In addition, each individual trustee serving on the Board of Trustees is a fiduciary within the meaning of § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

6. The Pension Fund maintains its principal place of business at 1101 Kermit Drive, Suite 800, Nashville, TN 37211, and is administered at that location.

7. Defendant WestRock RKT Company is a paper and packaging company that was formed in 2015 by the merger of the companies RockTenn and MeadWestvaco. WestRock RKT Company and its predecessors are referred to collectively below as "WestRock."

8. WestRock maintains its principal place of business at 1000 Abernathy Road NE Atlanta, GA 30328.

9. At all relevant times, WestRock was an employer in an industry affecting commerce within the meaning of §§ 3(5), 3(11), and 3(12) of ERISA, 29 U.S.C. § 1002(5), (11), and (12).

## Factual Allegations

10. The Pension Fund provides pension and related benefits to individuals, and the beneficiaries of individuals who worked for employers that participated in the Pension Fund and who were covered by collective bargaining agreements ("CBAs") between their employers and local unions affiliated with the United Steelworkers ("USW") or with the Paper, Allied-Industrial, Chemical and Energy Workers International Union ("PACE"), which merged into the USW in 2005.

11. The Pension Fund is funded by contributions from multiple employers. Each employer contributes a designated amount of money for hours worked by each of its covered employees, pursuant to the terms of the Pension Fund, Standard Form Agreements between the employer and the Pension Fund, and the collective bargaining agreements between the employer and

participating unions. These employer contributions are then pooled together into the Pension Fund to pay benefits and other expenses.

12. WestRock was a participating employer in the Pension Fund until it withdrew on December 30, 2017. During the decades it participated in the Pension Fund, WestRock (or its predecessor entities) made contributions to the Pension Fund in order to fund pension benefits for Pension Fund participants, including employees working under collective bargaining agreements between WestRock and local unions affiliated with PACE or the USW.

13. WestRock incurred an obligation to contribute to the Pension Fund through agreeing to a series of collective bargaining agreements ("CBAs") with local unions affiliated with PACE or USW; through agreeing to the Pension Fund's Standard Forms of Agreement for Participation in the Paper Industry Union-Management Pension Fund ("SFAs"), and through the operation of Section 515 of ERISA, 29 U.S.C. § 1145.

14. The Pension Fund's Standard Forms of Agreement bind WestRock to the Agreement and Declaration of Trust of the Pension Fund ("Trust Agreement") and, by its terms is "to be considered part of the collective bargaining agreement."

15. Over its many decades of participation in the Pension Fund, WestRock or its predecessors contributed to the Pension Fund for employees at forty-one facilities across the country. In 2017, the last year WestRock participated in the Fund, WestRock was the second largest contributing employer to the Pension Fund, contributing for employees in twelve separate bargaining units.

16. With changes in the industries covered by the Pension Fund, the number of employers participating in the Pension Fund has decreased steadily over the past decades. As of January 1, 2020, there were 49 participating employers in the Pension Fund and 4,4041 participants still working in covered employment. By comparison, at the end of 2011, the Pension Fund had approximately 142 participating employers and about 19,183 employees still working in covered employment.

17. Each month, the Pension Fund pays out almost $17 million in benefits to more than 33,000 participants and beneficiaries. There are also more than 29,000 participants with vested rights to a benefit who are not currently working in covered employment but are not yet receiving benefits.

18. Among the beneficiaries of the Pension Fund are large numbers of employees and former employees of WestRock or its predecessors who

earned benefit credit by virtue of their employment with WestRock or its predecessors. The Pension Fund is obligated to pay future lifetime benefits to many of those employees and former employees, and to their surviving spouses.

19. In 2010, the Pension Fund's actuary certified the Fund as being in "critical status" under ERISA § 305(b)(2), 29 U.S.C. § 1085(b)(2), as amended by the Pension Protection Act of 2006 ("PPA"). Specifically, the Pension Fund's actuary determined that the Pension Fund was in critical status under the PPA's definition, because, among other reasons, the Fund was projected to have an accumulated funding deficiency within four years after the 2010 plan year.

20. ERISA Section 304(a), 29 U.S.C. § 1084(a), defines an accumulated funding deficiency as "the amount, determined as of the end of the plan year, equal to the excess (if any) of the total charges to the funding standard account of the plan for all plan years (beginning with the first plan year for which this part applies to the plan) over the total credits to such account for such years." A "funding standard account" is an account that ERISA requires a multiemployer plan to establish; the account can be charged and credited

only for certain amounts enumerated by statute. ERISA Section 304(b), 29 U.S.C. § 1084(b).

21. When the Pension Fund was certified to be in critical status, ERISA, as amended by the PPA, required the Board of Trustees to develop and implement a "rehabilitation plan" to improve the Pension Fund's funding status. ERISA § 305(e)(3), 29 U.S.C. § 1085(e)(3). If the plan's board of trustees determines that "the plan can not reasonably be expected to emerge from critical status by the end of the rehabilitation period," under § 305(e)(3)(A)(ii), the board must develop a rehabilitation plan that includes "reasonable measures to emerge from critical status at a later time or to forestall possible insolvency."

22. Because the Board of Trustees determined that the Plan could "not reasonably be expected to emerge from critical status by the end of the rehabilitation period," the Board of Trustees adopted a Rehabilitation Plan under Section 305(e)(3)(A)(ii) to implement "reasonable measures. . . to forestall possible insolvency."

23. Since that time, the Pension Fund has maintained a Rehabilitation Plan, has complied with its Rehabilitation Plan, along with such amendments as have

been made to it from time to time, and has updated the Rehabilitation Plan as required by the PPA, see ERISA § 305(e)(3)(B), 29 U.S.C. § 1085(e)(3)(B).

24. In 2012, the Board of Trustees decided to amend the Rehabilitation Plan. As part of these amendments, in order to effectuate reasonable measures to forestall the date of insolvency, the Board adopted the following paragraph: "In addition, in the event an Employer withdraws during a Plan Year when the Fund has an accumulated funding deficiency, as determined under Section 304 of ERISA, the Employer shall be responsible for its pro rata share of such deficiency in addition to any withdrawal liability determined under Section 4211 of ERISA."

25. The updated Rehabilitation Plan was provided to all participating employers, including WestRock, in April 2013 as part of the Pension Fund's annual mailing to bargaining parties.

26. On October 5, 2015, WestRock filed a lawsuit (N.D. Ga. Case No. 1:15-cv-03505-CC) seeking a declaratory judgment that the Pension Fund could not require withdrawing employers to pay a pro rata share of the Pension Fund's accumulated funding deficiency. The district court dismissed WestRock's complaint on September 13, 2016. WestRock appealed that decision (11th Cir. Case No. 16-16443), and on May 16, 2017, the Eleventh Circuit

affirmed the district court's dismissal of the complaint. *WestRock RKT Co. v. Pace Indus. Union-Mgmt. Pension Fund*, 856 F.3d 1320 (11th Cir. 2017).

27. On December 28, 2017, WestRock notified the Pension Fund that it would completely withdraw from the Pension Fund effective December 30, 2017. Effective December 30, 2017, WestRock ceased to have an obligation to contribute to the Pension Fund and thus completely withdrew from participation in the Pension Fund within the meaning of Section 4203 of ERISA, 29 U.S.C. § 1383.

28. The Trust Agreement in effect at the time of WestRock's withdrawal required WestRock to make contributions to the Pension Fund "in the amounts set forth in the Collective Bargaining Agreements and any amendments thereto, or Participation Agreement and any amendments thereto, which may be currently in existence, or which hereinafter may be entered into." This section also provided that "[t]he contributions by the Employers shall be made in accordance with this Agreement and the Plan, and any rules or regulations promulgated by the Board of Trustees in connection therewith."

29. Article V, Section 1 of the Trust Agreement gives the Board of Trustees "the power and authority to administer the Trust and Plan, and perform all acts,

10

including those not specifically provided for in this Agreement, deemed necessary by the Board of Trustees to exercise and enforce all rights of the Trust and Plan, and to carry out their purposes." The "Plan" is defined as "the Rules and Regulations of the [Pension Fund] established and maintained pursuant to this Agreement, as amended from time to time."

30. The same Trust Agreement gives the Board of Trustees the power "[t]o construe the terms and provisions of this Agreement, the Plan and all other supplementary rules or regulations" and provides that "[t]he construction adopted by the Board of Trustees in good faith shall be binding upon the Employers, the Union, the Participants and Beneficiaries and all other persons who may be involved or affected."

31. The Pension Fund's Rehabilitation Plan in effect at the time of WestRock's withdrawal provided that, "in the event an Employer withdraws during a Plan Year when the Fund has an accumulated funding deficiency, as determined under Section 304 of ERISA, the Employer shall be responsible for its pro rata share of such deficiency in addition to any withdrawal liability determined under Section 4211 of ERISA."

32. Until December 30, 2017, WestRock participated in the Pension Fund and accrued the advantages of benefits to be paid to its employees and former

11

employees and their beneficiaries.  WestRock is bound to the terms of the Pension Fund's Trust Agreement and the pension plan as of December 30, 2017.

33. Through Standard Form Agreements signed over decades of its participation in the Pension Fund, WestRock became a party to, and was bound by, the Trust Agreement.  Each of these Standard Form Agreements also expressly stated that the Trust Agreement was incorporated into the Standard Form Agreement and that the Standard Form Agreement "is to be considered part of the collective bargaining agreement between the Employer and the Union."  As requested by the Fund upon the expiration of collective bargaining agreements at covered facilities, WestRock subsequently executed updated Standard Form Agreements for these facilities.

34. Following the Pension Fund's amendment of its Rehabilitation Plan, in 2013, the Pension Fund amended its Standard Form Agreement of participation in the Pension Fund to provide explicitly that "The Employer agrees to participate in the Fund in accordance with the terms and provisions of the Fund's Rehabilitation Plan, as amended."  WestRock executed such amended Standard Form Agreements for each of the twelve covered facilities between 2014 and the time of its withdrawal.

35. Because of WestRock's withdrawal from the Fund, WestRock is obligated to pay its pro rata share of the Pension Fund's accumulated funding deficiency.

36. The Pension Fund made a determination of the amount of WestRock's pro rata share of the Pension Fund's accumulated funding deficiency in compliance with the rules of the Pension Fund.  The Pension Fund notified WestRock of the determination and made a demand to WestRock for payment by letter dated January 31, 2020.  That letter stated that WestRock's pro rata share of the Pension Fund's accumulated funding deficiency was $51,179,408.06, minus a credit of $310,558.17, for a total of $50,868,849.92.  The letter requested that WestRock pay that amount within 30 days.  The letter also informed WestRock that failure to pay within 30 days would result in the assessment of interest on the delinquency at the rate of 12%, pursuant to the Pension Fund's delinquency policy.

37. WestRock failed to pay its pro rata share of the accumulated funding deficiency within 30 days of the letter dated January 31, 2020.  That pro rata share is a delinquent contribution within the meaning of sections 502(g) and 515 of ERISA.

38. To date, WestRock has not paid any of its pro rata share of the Pension Fund's accumulated funding deficiency.

39. The Pension Fund has in place a delinquency policy which governs the collection of delinquent contributions and provides for the remedies that are available to the Pension Fund when contributions are delinquent, including interest at an annualized rate of 12%, liquidated damages in an amount equal to the greater of (a) the accumulated interest on the unpaid contributions or (b) 20% of the unpaid contributions, plus attorneys' fees and cost of suit.

## *First Cause of Action (29 U.S.C. § 1145)*

40. Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 39.
41. WestRock is in default of its obligation to pay its pro rata share of the accumulated funding deficiency.
42. WestRock is liable under Section 515 of ERISA, 29 U.S.C. § 1145, for the full amount of this delinquency in contributions due and owing to Plaintiffs in the amount of $50,868,849.92.
43. Further, in accordance with the Agreement and Declaration of Trust, the SFAs, the rules and regulations of the Pension Fund, and Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), as a result of WestRock's failure to pay its pro rata share of the accumulated funding deficiency as due, WestRock is

obligated to pay interest, liquidated damages, attorneys' fees, and costs of the action.

### *Second Cause of Action (29 U.S.C. § 185)*

44. Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 43.

45. WestRock's collective bargaining agreements with the unions obligated WestRock to comply with the terms of the Standard Form Agreements with the Pension Fund and the Pension Fund's Trust Agreement. These collective bargaining agreements constitute contracts between an employer and a labor organization within the meaning of LMRA §301(a), 29 U.S.C. §185(a).

46. The Pension Fund is a third-party beneficiary of the collective bargaining agreements between WestRock and the local unions of the USW insofar as those agreements require WestRock to make contributions to the Pension Fund and incorporate the Standard Form Agreements between WestRock and the Pension Fund.

47. WestRock's failure to pay its pro rata share of the Pension Fund's accumulated funding deficiency constituted a breach of the collective bargaining agreements with the unions, and of the Standard Form Agreements with the Pension Fund, in violation of Section 301(a) of the

LMRA, 29 U.S.C. § 185(a). As a result, WestRock is liable in damages for the full amount of accumulated funding deficiency contributions due and owing to Plaintiffs and is obligated immediately to pay the amount of $50,868,849.92to the Pension Fund.

48. Further, in accordance with the terms of the Standard Form Agreements, as a result of WestRock's failure to pay its pro rata share of the accumulated funding deficiency as due, WestRock is obligated to pay interest, liquidated damages, attorneys' fees, and costs of the action.

### *Prayer for Relief*

WHEREFORE, Plaintiffs request the following relief:

A. A judgment ordering Defendant to pay to Plaintiffs:

    1. Defendant's delinquent contributions consisting of Defendant's pro rata share of the Pension Fund's accumulated funding deficiency in the amount of $50,868,849.92;

    2. Interest on Defendant's allocated share of the accumulated funding deficiency, beginning March 1, 2020, at the annual rate of twelve percent (12%);

    3. Post-judgment interest;

  4. Liquidated damages in the amount that is equal to the greater of (a) the interest on WestRock's pro rata share of the accumulated funding deficiency, or (b) twenty percent (20%), of the amount owed by WestRock;

  5. Plaintiffs' reasonable attorneys' fees and costs of this action; and

 B. Any such further relief as this Court may deem just and proper.

Dated: July 16, 2021

Respectfully submitted,

s/ James D. Fagan, Jr.
Georgia Bar No. 253950
Michael Schoenfeld
Georgia Bar No. 863727
Stanford Fagan LLC
2540 Lakewood Ave SW
Atlanta, GA 30315
(404) 622-0521
jimf@sfglawyers.com
michaels@sfglawyers.com

Kathleen M. Keller*
Elisabeth Oppenheimer*
Bredhoff & Kaiser, P.L.L.C.
805 15th St. N.W., Suite 1000
Washington, D.C. 20005
(202) 842-2600
kkeller@bredhoff.com

eoppenheimer@bredhoff.com

Attorneys for Plaintiffs

*Motion for Admission *Pro Hac Vice* forthcoming